UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-60101-CR-SMITH/VALLE

UNITED STATES OF AMERICA

vs.

PAUL VANDIVIER,
    a/k/a "Doug Wright," and
CINDY VANDIVIER,
    a/k/a "Madison Brooke,"
    a/k/a "Madison Brookes,"

        Defendants.
_____/

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF SENTENCING AND RESPONSE TO PAUL AND CINDY VANDIVIERS' OBJECTIONS TO THE <u>PRESENTENCE INVESTIGATION REPORT</u>**

    In one year, Paul and Cindy Vandivier, a married couple, ripped off investors in the company Social Voucher to the tune of over $2 million by using fake names to cover up prior civil fraud judgments, lying about the beefy commission they were taking (35 percent), and pretending to be employees for Social Voucher instead of two people cold calling investors off phone lists from their house. According to bank records, they personally pocketed almost $900,000. How did the Vandiviers spend the money they stole from investors? They used over $120,000 as a down payment on their $500,000 West Palm Beach home. They bought a $15,000 watch, put down $25,000 on a Chevrolet (and then $5,000 on truck accessories), spent over $10,000 in two months at Ralph Lauren, spent over $8,000 at Best Buy, withdrew almost $80,000 in cash, among other things. The Vandiviers argue that they should get credit for any value the court ordered receiver salvaged in the company *after* the FBI executed search warrants at the company headquarters and the Vandiviers' home. Their argument ignores not only the nature of their

criminal behavior and shocking greed, it also ignores the plain text of the Guidelines which only provides for fraudsters to receive an offset for returning money or services to the victim *before* the fraud was discovered. Because they never returned any of the money they stole before the discovery of this fraud, or after the discovery of the fraud for that matter, the Court should find that the foreseeable loss here is the full amount of money the Vandiviers stole from the Social Voucher victims. This is the same loss approach applied to the three co-defendants who have been sentenced. Further, to the extent that Cindy Vandivier claims she was a minor participant in this fraud, her argument is belied by a recording showing her full appreciation for the scope of this fraud and her bank account that documents the significant sum of money she stole. For all of these reasons, the Court should overrule the Vandiviers' objections to the PSR and sentence the Vandiviers within the Guidelines.

**I.     Background.**

The Vandiviers ran a boiler room out of their house, where they pitched stock in Social Voucher (later called Stocket), purportedly to develop a mobile gaming app, and other investments. A search of the Vandiviers' impressive West Palm Beach home, purchased with fraud proceeds, uncovered a list of the investors they referred to Social Voucher, documenting that they raised approximately $2.1 million for the company from investors. The Vandiviers defrauded these Social Voucher investors in a number of ways.

*Excessive, Undisclosed Commissions*

The Vandiviers received approximately 35 percent of the investor funds they raised for Social Voucher in commissions that were not disclosed to investors. Bank records show that the Vandiviers received approximately $880,000 from Social Voucher for referring investors through their boiler room between 2017 and 2018. According to Michael Assenza, a co-defendant and the

former director of technology at Social Voucher, the Vandiviers came to Social Voucher weekly and, to his recollection, once brought a potential investor in personally to tour the company. The Vandiviers were ultimately recorded by Assenza pretending that an investment bank might invest in Social Voucher and make them do things the right way by reducing commissions:

> Assenza: Now I'm thinking in the back of my head without really saying to Jace, I know you guys are whatever, thirty?
> Cindy Vandivier: We get thirty five percent.
> Assenza: That's a big step down.
> Cindy Vandivier: Yeah.

Both Vandiviers also admitted that their 35 commission was excessive and that nobody would invest if they knew how much the Vandiviers were taking:

> Paul Vandiver: I've, I've been through this already with the state. Went exactly through this, one hundred percent. So you take a salary and you then take a, a, a, a very nominal commission compared to what they paid out because it's just not disclosable at that rate.
> Assenza: No.
> Paul Vandivier: You can't disclose a thirty five percent for any legit deal.
> Cindy Vandivier: No, no, unless…
> Paul Vandivier: No one's gonna do it. It's too much.

*Concealing Prior Fraud Judgment*

Before committing fraud in this case, the Vandiviers were civil defendants in a Commodity Futures Trading Commission ("CFTC") enforcement action filed in the Southern District of Florida, alleging that they fraudulently solicited customers and misappropriated customer funds in connection with illegal, off-exchange transactions in precious metals from July 2011 to April 2013. The Vandiviers resolved this case by entry of a consent order imposing restitution of $986,673, a civil monetary penalty of $1,000,000, and banning them from any business activities relating to commodity interest trading, among other things. *See CFTC v. Mintline, Inc., et. al.*, No. 14-61125-CIV-WJZ (S.D. Fla), ECF No. 40. The Vandiviers personally signed the consent decree, which was subsequently adopted by an order from District Judge William Zloch, ECF No. 42. They

3

have not satisfied the judgment.

Both Vandivers admitted in their factual bases that they used fake names to cover up this fraud action from the Social Voucher investors. A number of investors told agents that they received calls from "Doug Wright" (aka Douglas Vandivier) or "Madison Brook" (aka Cindy Vandiver) pitching the Social Voucher/Stocket stock.

*Pretending to be Company Employees*

The Vandiviers also pretended to be working for the company instead of two people cold calling people out of boiler room in their house. Agents seized a script in the Vandiviers' home with the Social Voucher pitch containing a title "Front" and a note that it was "updated 6/13/18." The fronter script started by saying "Hi this is ___ with Stocket" and repeatedly referred to themselves and the company as "we." During the search, agents also seized investors packets and many contained printed copies emails to investors signed by "Doug Wright" or "Madison Brook" (their fake names) with the title Support Services at Social Voucher. Business cards for "Doug Wright" and "Madison Brook" were seized in the search, listing their titles at Stocket as "Portfolio Management Director" and "Support Specialist," respectively. Investors interviewed in the investigation said they were pitched by "Madison Brook" and "Doug Wright" from the company and they had no idea who the Vandiviers were.

*Gerald Parker's Gambling Addiction*

The Vandiviers were also well-aware that Gerald Parker, the CEO of the company, was gambling away a significant amount of Social Voucher investor funds and pressed them to raise investor money to spend at the casino. In a recorded conversation with Assenza they said the following:

> Assenza: Well listen, let's be uh you know, keep it honest.
> Cindy Vandivier: the gambling.

> Paul Vandivier:  Yeah, I think it's the gambling.
> Assenza:  Yeah.
> Paul Vandivier:  It's gotta be.
> Cindy Vandivier:  Like he'll, he'll call us and, and uhm you know, before we lost all our brokers, and eh you know, he would say something like well you know the weekend's coming, can you get money in by Friday? You know, can you get it in by Friday? The weekend's coming. And that, and I'd be like well, you know,
> Assenza:  What's so big about the weekend?
> Cindy Vandiver:  Yeah, what, what's the weekend? And, and he would kid around with me, well you know, the weekend, the weekend, you know. Gotta be able to…,
> Paul Vandivier:  Go to the Casino.
> Assenza:  Yeah.
> Paul Vandivier:  It's, it's,
> Cindy Vandivier:  And that's his whole motivation.

The Vandiviers and Assenza also discussed how Parker's gambling was affecting the company's development of a mobile gaming app (something that never occurred while the Vandivers were still at the company):

> Paul Vandivier:  and Jace know exactly what the issues are. And you know exactly how you're gonna deal with it. And then he can go away and you, you, you, you know, there you go. And that's exactly what I would do if I were in your shoes is I would do that immediately and then know exactly what the expenditure, what he owes, either to the Casinos, the brokers, have total money owes and then Jerry needs to understand that look, you're not just gonna put your hand in the till and take thirty, forty grand and go gamble that night with it thinking you're gonna double it up or whatever.
> Assenza:  right. This app would've already been marketed, it, it would already have been launched officially if it weren't for…
> Paul Vandivier:  But can you imagine the money that he's spent gambling? I bet it's probably at over a half million.
> Cindy Vandivier:  His wife too by the way.

*Parker's Legal Problems*

According to a Social Voucher pitch script seized in their house, the Vandivers and their employees told investors they were "proud" to have the "extremely talented" Parker "behind us" without disclosing Parker's gambling addiction or the fact that the company was hit with cease and desist orders in multiple states for selling an unregistered security. Also found in the Vandiviers' home was a highlighted copy of one of the state cease and desist orders precluding

5

Social Voucher from selling an unregistered security, as well the fact that Parker had a civil securities fraud judgment against him in federal court in Nebraska, facts the Vandivers did not disclose to investors. In particular, Paul Vandivier, who used to be licensed to sell securities, and Cindy Vandivier, who claims she was previously licensed to sell commodities, would have been well-aware of the significance of such a cease and desist order against Parker and the company:

> **Business Category**
> • Mobile Apps
> See More Business Categories
>
> ## Alerts & Actions
> **GOVERNMENT ACTION**
> The following describes a government action that has been resolved by either a settlement or a decision by a court or administrative agency. If the matter is being appealed, it will be noted below.
>
> As of December 10, 2015, the Colorado Securities Commissioner orders cease of securities solicitations by Florida's SocialVoucher.com
>
> A Florida-based mobile commerce application company allegedly "cold calling" Colorado residents and soliciting sales of company stock in connection with an initial public offering (IPO) was issued a cease and desist order.
>
> SocialVoucher.com and its controller Gerald Parker were ordered to immediately cease and desist all solicitations of unregistered securities within Colorado.
>
> The cease and desist order, signed by Colorado Securities Commissioner Gerald Rome of the Division of Securities, part of the Department of Regulatory Agencies (DORA), comes after investigating a complaint filed with the Division in October.
> The complaint noted that a Colorado resident had received multiple unsolicited phone calls from a SocialVoucher.com representative, who attempted to sell investments in what was described as the company's pre-IPO.
> The caller requested disclosure information that would typically be included with a pre-IPO solicitation.
>
> SocialVoucher.com and Parker failed to disclose a cease and desist consent order out of North Dakota, as well as and an unsatisfied civil judgment arising out of a class action lawsuit. The lawsuit alleging securities fraud was filed in the United States District Court for the District of Nebraska.

In addition, an investor file for investor R.C. was found at the Vandiviers' home office and had a note that "Doug closed [R.C.] for $50,000 @ $1.50 a share" on 8/17/17. There were subsequent notes that a voicemail was left on a number of days in September and October 2017. There was also a note that said: "may have seen article on North Dakota [ie Parker's civil fraud

6

judgment], don't ask for money, comfort and get him all info, packets, and answer all questions. Was closed for 50K but now needs assurance."

*Tax Returns*

Although the Vandiviers filed a federal tax return in 2013, before they started receiving commissions from Social Voucher, they never filed a federal tax return disclosing the $880,000 they received from Social Voucher (between 2017 and 2018) for referring investors.

*Court-Appointed Receiver*

After the FBI executed a search warrant at Social Voucher and the home of the Vandiviers in 2018, investors brought a lawsuit in state court in Palm Beach County and the court appointed James Sallah as a receiver to take over the company. Mr. Sallah provided testimony at the sentencing of co-defendant Paul Geraci and explained that when he took over the company, there was no money in the Social Voucher bank account and the patent for the mobile gaming app was pending, but that he was able to oust the defendants and subsequently turn the company around to a certain extent to hopefully salvage some value for the investors. To date, the Vandiviers have paid no money back to the Social Voucher investors. Nor have they paid back any money to the investors in the fraud case brought by the CFTC against the Vandiviers in our District.

II.     **The Vandivers Caused Over $2 Million in Loss to Investors.**

   A.     **Legal Standard**

Under § 2B1.1(b)(1), "loss is the greater of actual loss or intended loss." U.S.S.G. §2B1.1, Application Note 3(A). "The court need make only a reasonable estimate of the loss." U.S.S.G. §2B1.1, application note 3(C); *see also United States v. Miller*, 188 F.3d 1312, 1316-17 (11th Cir. 1999). With respect to calculating the amount of loss relevant for sentencing purposes, the district court is required "to support its loss calculation with reliable and specific evidence." *United States*

*v. Munoz*, 430 F.3d 1357, 1370 (11th Cir. 2005) (quoting *United States v. Renick*, 273 F.3d 1009, 1025 (11th Cir. 2001)). The Government's burden is to prove the amount of loss by a preponderance of the evidence. *Id*.

Under the Guidelines, the Vandiviers must be held responsible for all "reasonably foreseeable pecuniary harm." *See* Section 2B1.1, application note 3(A)(i) ("Actual Loss"). "'Reasonably Foreseeable Pecuniary Harm' means pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known was a potential result of the offense." *Id.* at application note 3(A)(iii). Under U.S.S.G. § 1B1.3(a)(1)(B), "the district court may hold participants in a conspiracy responsible for the losses resulting from the reasonably foreseeable acts of co-conspirators in furtherance of the conspiracy." *United States v. Hunter,* 323 F.3d 1314, 1319 (11th Cir. 2003). For example, the Eleventh Circuit held the entire loss caused by a money laundering scheme properly was attributed to the defendant because he "was fully aware of the objective of the conspiracy and was actively involved in recruiting investors to further the . . . scheme." *United States v. McCrimmon,* 362 F.3d 725, 732 (11th Cir. 2004).

Under the Guidelines, the fair market value of property returned or services rendered to the victim "before the offense was detected" may be credited against a loss. U.S.G.G. § 2B1.1(b)(1), Application Note 3(E)(i). According to the 2001 Amendment to the Guidelines, this provision codifies such a "net loss" approach because "this approach recognizes that the offender who transfers something of value to the victim(s) generally is committing a less serious offense than an offender who does not." *See* Amendment 617 to 2B2.1.

### B. Application of U.S.S.G. § 3B1.1(b) to the Vandivers.

The Government has established by a preponderance of the evidence that the Vandiviers reasonably foresaw the investors they solicited would lose the full amount of their investment as a result of their actions and the actions of their co-conspirators, including:

- Their own factual bases
- The statements of Assenza, as memorialized in an interview report
- The factual proffer of Assenza
- Recordings of the Vanidviers conducted by Assenza
- Bank records
- Materials seized from the Vandivers home
- The statement of the court-appointed receiver

The Vandiviers kept a spreadsheet in their house totaling all the money they raised from investors – over $2 million. The Vandiviers knew they were squandering 35 percent of the investment money on personal expenses, not to develop the mobile gaming app, and they admitted that a commission that large would never fly in a "legit" deal. The Vandiviers knew Parker was literally gambling with investor money at the casino. And they had documents in their house showing Parker had a federal civil securities fraud judgment against him. The Vandiviers, both previously licensed to sell commodities and, in the case of Paul Vandivier licensed to sell securities, knew that the Social Voucher stock offering was not registered and had an article in their possession documenting that Parker had cease and desists against him for offering an unregistered security to investors. The entirety of the loss was foreseeable to the Vandiviers, especially given that they both had a previous federal fraud judgment against them for misappropriating investors funds.

Further, the Vandiviers have not paid back one cent to the investors, let alone paid them back before the discovery of this fraud, and therefore there is no basis to give them a credit under

9

the clear text of the Guidelines. To the extent that the receiver ousted them and, only after that, was able to salvage value from the company is further proof of their fraud.

**III.     Cindy Vandivier Was Not A Minor Participant in this Sprawling Fraud.**

   **A.     Legal Standard.**

Section 3B1.2 provides for a two-level reduction in the offense level where the defendant was a "minor participant" in the criminal activity. U.S.S.G. § 3B1.2(b) (2014). A minor participant is one "who is less culpable than most other participants, but whose role could not be described as minimal." *Id*. § 3B1.2(b) cmt. n.5 (2014). Whether a defendant is entitled to a minor role reduction is "based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case." *Id*. § 3B1.2(b) cmt. n.3(C). Two principles guide the determination of whether a defendant played a minor role in the criminal scheme: (1) "the defendant's role in the relevant conduct for which she has been held accountable at sentencing," and (2) "her role as compared to that of other participants in her relevant conduct." *United States v. De Varon*, 175 F.3d 930, 940 (11th Cir 1999) (en banc).

In 2015, the Sentencing Commission amended § 3B1.2's commentary to provide additional guidance regarding the minor role reduction. *See* U.S.S.G. supp. to app. C, amend. 794 (Reason for Amendment). Similar to the fact-intensive, multi-faceted approach established in *De Varon*, Amendment 794 provides a non-exhaustive list of factors to be considered when determining whether a defendant qualifies for a minor role reduction: (1) "the degree to which the defendant understood the scope and structure of the criminal activity;" (2) "the degree to which the defendant participated in planning or organizing the criminal activity;" (3) "the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;" (4) "the nature and extent of the defendant's participation in the commission of the criminal activity,

including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;" and (5) "the degree to which the defendant stood to benefit from the criminal activity." U.S.S.G. § 3B.1.2 cmt. n.3(C) (2015).

### B. Application of U.S.S.G. § 3B1.2(b) to Cindy Vandivier.

Vandivier was not a minor participant in this fraud. She and her husband enjoyed a handsome share of the profits (35 percent of the investment). On the recording, it was clear that she appreciated the nature of the fraud, including the outrageous of her undisclosed commission and the fact that Parker was gambling investor money. Cindy Vandivier admitted in her factual basis to using a fake name to cover up a prior civil fraud action. The statement of investors, and emails provide by investors, shows she was contacting them directly to encourage the purchase of this bogus investment, an essential part of organizing this fraud scheme. She was a key player in this fraud.

### IV. Both Vandiviers Deserve a Guidelines Sentence.[1]

The Vandiviers have not demonstrated a basis for the Court to vary or depart downward from a Guidelines sentence. As will be argued further at the sentencing hearing, the Government will therefore be asking for Guidelines sentences for both defendants.

---

[1] The Government informed US. Probation that they incorrectly calculated Paul Vandivier as a criminal history category II, finding that he committed the instant offense while on probation for a drug possession charge. That drug possession charge was a result of the search warrant in this case in June 2018, which effectively marked the end of his conduct the instant case. In addition, the Government informed U.S. Probation that sophisticated means is inapplicable to the Vandiviers given that their conduct did not involve the use of shell companies or other hallmarks of sophisticated means.

## **CONCLUSION**

For all these reasons, the Court should overrule the Vandivers's objections to the presentence investigation report and find that they should be sentenced within the Guidelines.

Dated: November 29, 2022                Respectfully submitted,

                                        JUAN ANTONIO GONZALEZ
                                        UNITED STATES ATTORNEY

              By:           /s/     Elizabeth Young
                                        ELIZABETH YOUNG
                                        WILL ROSENZWEIG
                                        Assistant United States Attorney
                                        Court ID No. A5501858
                                        Elizabeth.Young@usdoj.gov
                                        United States Attorney's Office
                                        99 Northeast 4th Street
                                        Miami, Florida 33132-2111
                                        Tel: (786) 761-3153